FILED
2020 AUG 19
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TERRI MUNK,<br><br>     Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>     Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case #4:19-cv-00080-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Terri Munk's appeal from the decision of the Social Security Administration denying her application for disability, disability insurance benefits, and supplemental security income. The Court held oral arguments on August 3, 2020. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will reverse and remand the administrative ruling.

I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II.  BACKGROUND

A.   PROCEDURAL HISTORY

In May 2012, Plaintiff filed an application for disability and disability insurance benefits, as well as supplemental security income, alleging disability beginning on December 1, 2009.[7] The claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on February 19, 2014.[9] After the initial ALJ retired, a supplemental hearing was held on July 8, 2014, before the newly-assigned ALJ.[10] The ALJ issued a decision on September 25, 2014, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on June 8, 2016.[12]

Plaintiff appealed to this Court in August 2016. The Commissioner filed an unopposed motion to remand, which was granted by the Court.

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 268–71, 272–80.

[8] *Id.* at 159–62.

[9] *Id.* at 42–71.

[10] *Id.* at 72–132.

[11] *Id.* at 15–41.

[12] *Id.* at 1–5.

2

The Appeals Council issued a remand order on February 27, 2017.[13] The remand order directed the ALJ to evaluate the opinion of Rox Burkett, M.D., give further consideration to Plaintiff's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert.[14]

A remand hearing was held on July 27, 2017.[15] The ALJ again issued an unfavorable decision on December 5, 2017.[16] The Appeals Council remanded that decision on July 25, 2018.[17] In that remand order, the Appeals Council directed the ALJ to further consider whether Plaintiff's past work as a mortgage loan officer satisfied the criteria for past relevant work.[18]

A second remand hearing was held on January 17, 2019.[19] The ALJ once again issued an unfavorable decision on March 22, 2019.[20] The Appeals Council denied review on July 29, 2019,[21] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[22]

---

[13] *Id.* at 841–47.
[14] *Id.* at 844–46.
[15] *Id.* at 804–36.
[16] *Id.* at 848–69.
[17] *Id.* at 870–74.
[18] *Id.* at 872–74.
[19] *Id.* at 786–803.
[20] *Id.* at 750–85.
[21] *Id.* at 743–49.
[22] 20 C.F.R. § 422.210(a).

On September 30, 2019, Plaintiff filed her complaint in this case.[23] The Commissioner filed his answer and the administrative record on December 5, 2019.[24] On December 10, 2019, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[25]

Plaintiff filed her Opening Brief on January 31, 2020.[26] Defendant filed his Answer Brief on April 3, 2020.[27] Plaintiff filed her Reply Brief on April 19, 2020.[28]

B.  MEDICAL HISTORY

Plaintiff has a history of neck and back pain. In March 2006, Plaintiff presented with a complaint of neck pain.[29] An MRI of the cervical spine showed a degenerative disc at C5-C6, a small syrinx at C6-C7, and hemangiomas at T2 and T3.[30] A cervical collar and cervical facet blocks were recommended.[31]

In July 2008, Plaintiff suffered a back injury after she was bucked off a horse.[32] Imaging revealed a mild disc bulge at L5-S1 and nondisplaced transverse process fractures at L1 through

---

[23] Docket No. 2.
[24] Docket Nos. 6, 7.
[25] Docket No. 12.
[26] Docket No. 15.
[27] Docket No. 19.
[28] Docket No. 20.
[29] R. at 425.
[30] *Id.* at 426.
[31] *Id.* at 426–27.
[32] *Id.* at 438.

L4.[33] Cervical epidural steroid injections were recommended.[34] However, these injections were discontinued after Plaintiff experienced pain.[35] Plaintiff regularly treated her pain with medication.

In September 2010, Plaintiff complained of hip pain.[36] Her doctor, Gregory Last, M.D., diagnosed sciatica.[37] Around this time, Plaintiff stated that she could walk four blocks, but it bothered her back.[38] She further stated that a neighbor helped were with laundry and her children helped with heavier things.[39] One of Plaintiff's treating physicians, Max Root, M.D., opined that Plaintiff could not perform sedentary work.[40]

On September 29, 2010, Rox Burkett, M.D., a state agency physician, opined that Plaintiff appeared capable of sedentary work.[41] As will be discussed below, Dr. Burkett later provided contrary opinions after he left the agency.

On August 28, 2012, Dr. Last prepared a letter and he stated that he had been Plaintiff's physician for the past four years.[42] Dr. Last noted that Plaintiff suffered from chronic neck and low back pain, and lumbago.[43] In the time that Dr. Last treated Plaintiff, he had not seen any

---

[33] *Id.* at 441.
[34] *Id.* at 460.
[35] *Id.* at 477.
[36] *Id.* at 622.
[37] *Id.*
[38] *Id.* at 623.
[39] *Id.*
[40] *Id.* at 619.
[41] *Id.* at 639.
[42] *Id.* at 669.
[43] *Id.*

5

improvement in Plaintiff's condition, and he thought it unlikely to improve.[44] Dr. Last stated that Plaintiff could lift 10 pounds occasionally, would not be able to push or pull anything, climbing stairs would be difficult, and she would be unable to sit for more than half an hour at a time.[45] As a result, Dr. Last stated that "[a]ny kind of potential work that she could do would be difficult."[46]

Dr. Last completed a Physical Residual Function Capacity Statement in January 2014.[47] Dr. Last opined that Plaintiff's pain would frequently interfere with her ability to perform simple work tasks.[48] Dr. Last stated that Plaintiff could not walk one city block without pain, would need to lie down or recline for about 4 hours during an 8-hour work day, could sit for about 2 hours, and stand and walk for about 2 hours.[49] Dr. Last stated that Plaintiff would be off task more than 30% of the time and would be absent 5 or more days per month.[50]

In June 2014, Plaintiff's file was reviewed by Dr. Burkett.[51] After review of the medical record and the opinions of Dr. Root and Dr. Last, Dr. Burkett opined that Plaintiff was unable to sustain substantial gainful activity.[52]

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at 715–18.

[48] *Id.* at 715.

[49] *Id.* at 716.

[50] *Id.* at 718.

[51] *Id.* at 738–41.

[52] *Id.* at 741.

Dr. Last provided a letter on February 9, 2017.[53] Dr. Last opined that Plaintiff's pain limited her in a number of areas.[54] Dr. Last stated that he did "not see any possibility that she could be accommodated in any capacity which would allow her to perform compensatable [sic] work."[55]

Dr. Last completed a Treating Source Statement of Physical Limitations on June 6, 2017.[56] Dr. Last stated that Plaintiff could lift less than 10 pounds, walk for less than 2 hours, that her symptoms would interfere with her ability to perform simple tasks 20% or more of the time, she would be off task 20% of the time or more, would be absent 4 days or more per month, and would be 50% less efficient than an average worker.[57]

Dr. Burkett again reviewed Plaintiff's file on January 3, 2019.[58] Dr. Burkett again opined that Plaintiff's ailments prevented her from engaging in substantial gainful employment.[59]

With respect to her mental conditions, Plaintiff has a history of depression. Plaintiff was seen by Elizabeth Allen, Ph.D., for an evaluation. Dr. Allen diagnosed major depressive disorder.[60] Dr. Allen opined that Plaintiff's cognitive, attention, concentration, and memory

---

[53] *Id.* at 1255.
[54] *Id.*
[55] *Id.*
[56] *Id.* at 1256–57.
[57] *Id.*
[58] *Id.* at 1344–45.
[59] *Id.* at 1345.
[60] *Id.* at 651.

7

skills appeared within normal limits, suggesting that she was cognitively capable of understanding, remembering, and carrying out most job instructions.[61]

C.      HEARING TESTIMONY

At the initial haring, Plaintiff testified that she last worked in 2009.[62] Plaintiff stated that she experiences a lot of pain, which made it difficult to sit or stand for long periods of time.[63] Plaintiff stated that her children help her with laundry and grocery shopping.[64] Additionally, she stated that her neighbor helped take care of her children.[65] Plaintiff also testified that she suffered from depression.[66]

At the conclusion of the hearing, the ALJ ordered a consultative exam. For this, Plaintiff saw Joseph Fyans, M.D. Dr. Fyans reported that he was unable to provide any specific limitations because of certain discrepancies in the examination.[67]

During the supplemental hearing, the ALJ and Plaintiff's attorney engaged in a lengthy discussion about counsel's concerns with the consultative evaluation performed by Dr. Fyans. Counsel believed that Dr. Fyans' report contained various inaccuracies. The ALJ allowed

---

[61] *Id.*

[62] *Id.* at 50.

[63] *Id.* at 51.

[64] *Id.* at 54.

[65] *Id.* at 61–62.

[66] *Id.* at 59–60.

[67] *Id.* at 730.

8

counsel the opportunity to submit proposed interrogatories to address these concerns.[68] However, ultimately, the ALJ refused to send the interrogatories.[69]

The first remand hearing was held on July 27, 2017. Plaintiff testified that there was no change in her conditions since the previous hearing.[70] Plaintiff stated that her back pain made it difficult to walk, sit, stand, and lift.[71] Plaintiff also stated that she used a cane and a back brace.[72] Plaintiff further stated that friends and neighbors helped with her children and housework.[73] Plaintiff also testified that she suffers from depression.[74]

The vocational expert identified mortgage loan processor as past relevant work.[75] In response to a hypothetical question, the vocational expert testified that the hypothetical person could work as a mortgage loan processor.[76]

At the second remand hearing, Plaintiff confirmed that she continued to suffer from neck and back pain.[77] She further stated that she also suffers from migraines, with up to eight or nine per month.[78] Plaintiff also stated that she was using a cane that had been prescribed by Dr.

---

[68] *Id.* at 395–96.
[69] *Id.* at 888 n.4.
[70] *Id.* at 814.
[71] *Id.* at 816.
[72] *Id.* at 817.
[73] *Id.* at 819.
[74] *Id.* at 822.
[75] *Id.* at 831.
[76] *Id.* at 833.
[77] *Id.* at 790.
[78] *Id.* at 792.

Last.[79] Plaintiff stated that she had difficulty doing housework and that she relies on neighbors for help.[80] Plaintiff further testified that she had difficulty showering and getting dressed because of her pain.[81]

The vocational expert testified that Plaintiff's past work included that of a mortgage loan processor.[82] Upon questioning, Plaintiff stated that she worked as a mortgage loan processor for about a year.[83] In response to a hypothetical question from the ALJ, the vocational expert testified that the hypothetical person could work as a mortgage loan processor.[84] She also identified other jobs the person could perform.[85]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 30, 2009, the amended alleged onset date.[86] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine with disc protrusion, a history of non-displaced fractures of the transverse processes of L1-L4 with disc bulging and protrusion at the L4-5 and L5-S1 levels, and mild

---

[79] *Id.*
[80] *Id.* at 795–96.
[81] *Id.* at 796–97.
[82] *Id.* at 798.
[83] *Id.* at 799.
[84] *Id.*
[85] *Id.* at 800.
[86] *Id.* at 756.

degenerative disease of the hips.[87] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[88] The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work, with certain modifications.[89] At step four, the ALJ determined that Plaintiff could perform her past relevant work as a mortgage loan processor.[90] Alternatively, at step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[91]

### III.  DISCUSSION

Plaintiff raises two issues in her brief: whether the ALJ failed to follow the instructions of the Appeals Council on remand; and whether the ALJ failed to include all of Plaintiff's limitations in his residual functional capacity assessment.

A.  INSTRUCTIONS OF THE APPEALS COUNCIL

The Appeals Council remanded this matter twice. Each time, it provided specific instructions to the ALJ. An ALJ is required to take any action ordered by the Appeals Council.[92] The Court, then, has the authority to consider whether the ALJ complied.[93]

---

[87] *Id.*

[88] *Id.* at 759–60.

[89] *Id.* at 760–73.

[90] *Id.* at 774–75.

[91] *Id.* at 775–76.

[92] 29 C.F.R. § 404.977(b).

[93] *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1180 (10th Cir. 2020).

11

Relevant here, the Appeals Council directed the ALJ to evaluate the opinions of Dr. Burkett and determine whether Plaintiff's prior work as a mortgage loan processor constituted past relevant work. Plaintiff takes issue with the ALJ's decision on both.

1. *Medical Opinion Evidence*

    a. *Dr. Burkett*

Dr. Burkett provided two opinions in this case. In each, he stated his opinion that Plaintiff could not engage in substantial gainful employment. The ALJ initially refused to consider Dr. Burkett's opinions because of a potential conflict of interest, since Dr. Burkett had previously worked on Plaintiff's case as a state agency physician. However, the Appeals Council directed the ALJ to evaluate Dr. Burkett's opinions.

Unlike the initial decision, the ALJ did evaluate Dr. Burkett's opinions, giving them little weight. Thus, the ALJ followed the direction of the Appeals Council. The question then is whether the ALJ's analysis of Dr. Burkett's opinions was supported by substantial evidence. For the reasons discussed below, the Court finds that the ALJ's review of Dr. Burkett's opinions was flawed.

An ALJ must review every medical opinion.[94] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[95] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[96] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent

---

[94] 20 C.F.R. § 404.1527(c).

[95] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[96] *Id.*

12

with other substantial evidence in the record.[97] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[98]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[99] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[100]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[101] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[102]

The ALJ gave little weight to the opinions of Dr. Burkett. The ALJ provided a number of reasons for this decision. The Commissioner concedes that at least some of the ALJ's proffered reasons are "technically inaccurate."[103] For example, the ALJ stated that Dr. Burkett only reviewed a fraction of the medical evidence. But this is simply not correct. Dr. Burkett stated

---

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[101] *Id.*

[102] *Id.*

[103] Docket No. 19, at 12.

13

that he reviewed the medical evidence[104] and there is nothing to support the ALJ's statement to the contrary.

The ALJ also stated that Dr. Burkett simply relied on the opinions of Dr. Last and Dr. Root and offered "no basis for his opinion" beyond these opinions.[105] This is not a fair characterization of Dr. Burkett's opinion. While he did cite to and rely upon the opinions of Dr. Last and Dr. Root, he also cited extensively to the record evidence that he believed provided support for his opinion.[106]

The ALJ also stated that Dr. Burkett did not set forth the "objective support for his opinions."[107] But, again, this is not accurate. He laid out in those medical records that he relied on in reaching his decision.

In arguing against remand, the Commissioner provides other reasons to reject Dr. Burkett's opinions. He argues that Dr. Burkett's opinion that Plaintiff was not capable of substantial gainful employment is "not a true medical opinion."[108] The Commissioner also argues that Dr. Burkett's summary of the record is "fundamentally flawed."[109] However, the ALJ did not reject Dr. Burkett's opinions for these reasons. Thus, the Court may not accept this post hoc rationale.[110]

---

[104] R. at 738, 1344.

[105] *Id.* at 769.

[106] *Id.* at 738–41, 1344–45.

[107] *Id.* at 770.

[108] Docket No. 19, at 10 (quoting *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008)).

[109] *Id.* at 13.

[110] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

14

While there may be valid reasons to discount Dr. Burkett's opinions, the ALJ's analysis suffers from serious flaws. The Court cannot conclude that these errors were harmless. Harmless error occurs "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[111] In this case, the Court is not confident that the ALJ would continue to afford Dr. Burkett's opinions the same weight when these factual errors are removed. Therefore, remand in necessary.

### b. Dr. Fyans

Plaintiff also takes issue with the ALJ giving partial weight to Dr. Fyans' findings because of the concerns expressed by Plaintiff's counsel at the supplemental hearing. Because this matter must be remanded, the ALJ is free to reassess Dr. Fyans' opinion below.

### 2. *Mortgage Loan Officer*

The Appeals Council also directed the ALJ to consider whether Plaintiff's past work as a mortgage loan officer satisfied the criteria for past relevant work. There is no question that the ALJ did not do so. However, any error in failing to determine whether Plaintiff's work qualified as past relevant work was harmless given the ALJ's finding at step five.[112] Therefore, remand is not required on this ground.

In her reply, Plaintiff argues that the vocational expert's alleged failure to provide a proper opinion of Plaintiff's past relevant work calls into question her opinions as to Plaintiff's

---

[111] *Id.*

[112] *See Murrell v. Shalala*, 43 F.3d 1388, 1389–90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four).

15

ability to perform other work. Plaintiff, however, fails to further develop this argument. Specifically, Plaintiff does not point to any other alleged errors in the vocational expert's testimony. In short, there is no evidence that the vocational expert's testimony is somehow tainted by her alleged failure to properly determine whether Plaintiff's work as a mortgage loan processor constituted past relevant work.

B.     RESIDUAL FUNCTIONAL CAPACITY

Plaintiff also argues that the ALJ failed to include all of Plaintiff's impairments in his residual functional capacity assessment.

*1.     Migraines*

Plaintiff reported experiencing migraines about eight times per month. The ALJ stated that, while the record contained reports of migraines, it did not establish that they occurred at the frequency asserted by Plaintiff at the hearing. The ALJ went on to state that there was no "documented diagnosis of migraines by an acceptable medical source of record."[113] The ALJ also pointed to records that indicated that Plaintiff took medication for headaches, which worked well for her. Thus, the ALJ concluded as follows: "While the record indicates that the claimant has headaches, it does not establish that they occur with such frequency or severity as to cause more than minimal interference with the performance of basic work-related activities. They are therefore considered non-severe."[114]

The parties agree that it was error for the ALJ to state that there was no documented diagnosis of migraines by an acceptable medical source. Dr. Last had, in fact, diagnosed

---

[113] R. at 756.

[114] *Id.*

16

migraines.[115] The Commissioner argues that any error was harmless because the ALJ provided good reasons, supported by substantial evidence, to support his conclusion that Plaintiff's migraines were not as limiting as she suggested. Because this case must be remanded, the ALJ should consider Dr. Last's diagnosis in his determination of whether Plaintiff's migraines are severe impairments and if they pose any functional limitations.

   *2.     Use of a Cane*

Plaintiff appeared at the remand hearings with a cane and testified that it had been prescribed by Dr. Last. The ALJ stated that "there is nothing to corroborate [Plaintiff's] testimony that Dr. Last prescribed a cane for her use."[116] This statement is factually inaccurate as the record contains a prescription for a cane from Dr. Last.[117] This factual error alone, however, does not require reversal because the "legal issue does not turn on whether a cane was 'prescribed' for [Plaintiff], but whether a cane was 'medically required.'"[118]

To be medically required, there must be medical documentation supporting the need.[119] The ALJ specifically found that none of Dr. Last's reports described a medical necessity for an assistive device.[120] Plaintiff does not contest this, but instead points to evidence in the record that shows that Plaintiff had difficulty ambulating. However, Plaintiff fails to point to any medical documentation demonstrating that use of a cane was medically required. Ultimately,

---

[115] *Id.* at 1331.

[116] *Id.* at 766.

[117] *Id.* at 725.

[118] *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)).

[119] SSR 96-9p, 1996 WL 374185, at *7.

[120] R. at 766.

17

because this case must be remanded, the ALJ should consider Dr. Last's prescription for a cane in determining whether a cane is medically required and any limitations that might be placed on Plaintiff's residual functional capacity based on her use of a cane.[121]

## IV.  CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

DATED this 19th day of August, 2020.

BY THE COURT:

Paul Kohler
United States Magistrate Judge

---

[121] *Spaulding*, 379 F. App'x at 780–81.